UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEVIN X. HOYT,

                          Plaintiff,

          v.                                          **DECISION AND ORDER**
                                                      13-CV-920S
ALBERT PRACK, et al.,

                          Defendants.

## I. INTRODUCTION

*Pro se* Plaintiff Devin X. Hoyt, a prisoner currently housed at Auburn Correctional Facility, filed this action seeking relief under 42 U.S.C. § 1983. (Docket No. 1.) Presently before the Court is a motion for partial summary judgment submitted by Defendants Albert Prack, Dale Artus, and E.J. Meyer. (Docket No. 14.) For the following reasons, Defendants' motion is granted as to the claims against Prack and Artus and denied as to the claim against Meyer.

## II. BACKGROUND

**A.      Procedural Background**

Plaintiff filed the Complaint in September 2013, asserting four causes of action. Following an initial screening, certain of Plaintiff's claims were dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. (February 14, 2014 Decision and Order at 10, Docket No. 3.) Three causes of action remain. Plaintiff alleges that: (1) Defendants Meyer, Artus, and Prack denied him due process in connection with a disciplinary hearing, (2) Defendants R. Beall, P. Black, J. Horvatits, and Barlow, correctional officers, used excessive force on him in connection with an incident on September 27,

1

2012, and (3) Defendants Beall and Artus failed to properly supervise the correctional officers working under them.  The motion for partial summary judgment presently before this Court addresses only the claims against Meyer, Artus, and Prack.

## B.    Factual Background[1]

During the time period alleged in the Complaint, Plaintiff was incarcerated at Wende Correctional Facility ("Wende").  (Defs.' Rule 56 Stmt. ¶ 2.)  On September 27, 2012, during a lock down and cell search, an incident occurred resulting in an altercation between Plaintiff and several correctional officers.  (Compl. ¶¶ 20-30, R. 84.)[2]  Plaintiff claims that Artus, Wende's Superintendent, was present during this altercation.  (Pl.'s Rule 56 Stmt. ¶ 6.)  The same day, one of the correctional officers filed an "Inmate Misbehavior Report," alleging that Plaintiff struck him with a closed fist. (R. 84.)

On September 28, 2012, Plaintiff met with an inmate assistant regarding the upcoming Tier III Hearing[3] on the Inmate Misbehavior Report.  (Defs.' Rule 56 Stmt. ¶¶ 8-9.)  Plaintiff requested a number of documents to assist in his preparation for the

---

[1] Many of the facts are taken directly from Plaintiff's Complaint and Defendants' Statement of Undisputed Facts.  (Docket Nos. 1, 15.)  Although this Court must generally view the facts in the light most favorable to the non-moving party, Local Rule 56(a)(2) states that "[e]ach numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Moreover, Local Rule 5.2, entitled "*Pro Se* Actions," states in pertinent part as follows:  "All *pro se* litigants shall become familiar with, follow, and comply with the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure, including those rules with special provisions for *pro se* litigants such as L.R.Civ.P. 1.3, 5.2, 5.5, 11, 16 and 54.  Failure to comply with the Federal Rules of Civil Procedure and Local Rules of Civil Procedure may result in the dismissal of the case, with prejudice."  Local Rule Civil Procedure 5.2(i).  In the instant case, when Defendants filed the subject partial summary judgment motion (Docket No. 14), they filed, *inter alia*, a Statement of Undisputed Facts, along with an Irby notice pursuant to Local Rule 56(b).  Plaintiff's response (Docket No. 21) includes a purported "Statement of Disputed Factual Issues," which consists primarily of legal conclusions rather than facts.  To the extent that Plaintiff's response includes actual statements of fact, this Court has included them in its recitation.
[2] Page references preceded by "R." indicate the Bates numbers associated with the exhibits attached to Defendants' Rule 56 statement.
[3] "DOCCs conducts three types of inmate disciplinary hearings. . . .  Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of 'good time' credits."  Dawes v. Racette, No. 9:12-CV-0718 (NAM/DEP), 2014 WL 6674636, at *2 n. 1 (N.D.N.Y. Oct. 22, 2014).

Tier III Hearing, which he received only a few hours before the proceedings began. (Pl.'s Rule 56 Stmt. ¶ 1.)  Plaintiff also requested that a number of witnesses appear at the Tier III Hearing; two inmate witnesses refused to appear and filled out witness refusal forms.  (Id. ¶ 4.)  These forms were not signed by Department of Corrections and Community Supervision ("DOCCS") staff.  (R. 92-93.)  Meyer, the Corrections Captain at Wende who presided over the Tier III Hearing, did not personally question the refusing witnesses regarding their refusal to testify.  (Compl. ¶ 65.)

The Tier III Hearing began on October 2, 2012, and concluded on October 19, 2012.  (Defs.' Rule 56 Stmt. ¶¶ 8, 25.)  During the hearing, Meyer heard testimony from eight inmate witnesses and eight DOCCS staff witnesses.  (Id. ¶¶ 13-17.)  Plaintiff had an opportunity to question each of the witnesses.  (Id. ¶¶ 14-18.)  Plaintiff alleges that, during the hearing, Meyer made an off-the-record promise to Beall, the Correctional Sergeant present during the September 27, 2012 incident:  "I give you my word we won't have to worry about Hoyt for a long time once we wrap this hearing up, and we'll see whose [sic] smiling then."  (Compl. ¶ 54.)  Following the hearing, Meyer found Plaintiff guilty of the charges set forth in the misbehavior report and sentenced him to 24 months of SHU confinement and loss of privileges.  (Defs.' Rule 56 Stmt. ¶ 25.)  At that time, Meyer provided a written statement to Plaintiff of the evidence relied on and the reasons for the disciplinary action.  (Id. ¶ 26, R. 79-81.)

Plaintiff filed an administrative appeal with Artus, which was denied.  (Pl.'s Rule 56 Stmt. ¶ 7.)  Plaintiff also made appeal to Prack, the DOCCS Director of Special Housing/Inmate Disciplinary Program, who modified Plaintiff's punishment to a 12 month SHU confinement and loss of privileges but otherwise affirmed Meyer's decision.

(Defs.' Rule 56 Stmt. ¶¶ 27-28, R. 171-72.)

### III. DISCUSSION

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010).   A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986)).   "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2003) cert. denied, 540 U.S. 811 (2003) (quoting Anderson, 477 U.S. at 248).   A court must also "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

Further, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" Triestman v. Federal Bur. of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)).   "A *pro se* plaintiff, however, cannot defeat a motion for summary judgment by simply relying on the allegations of his complaint; he must present admissible evidence from which a reasonable jury could find in his favor." Belpasso v. Port Auth. of New York & New

4

Jersey, 400 Fed. App'x 600, 601 (2d Cir. 2010); see Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996) (summary judgment properly entered against *pro se* plaintiff who failed to oppose motion with admissible evidence after receiving plainly worded warning of the consequences of such failure).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

Plaintiff seeks damages for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983.  This section imposes civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  Section 1983 does not itself provide a source of substantive rights, but instead provides the mechanism by which a plaintiff may seek vindication of federal rights conferred elsewhere.  Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L. Ed. 2d 443 (1989).  Here, Plaintiff's claims are grounded in the Eighth and Fourteenth Amendments.

## A.   Fourteenth Amendment Claims

### 1.  Due Process Claim Against Meyer

Plaintiff's first cause of action alleges procedural due process failures at the Tier III Hearing.  Plaintiff makes a number of claims regarding the impropriety of the hearing, including that he had only three hours to review relevant documents, that the notices signed by witnesses who refused to testify were not also signed by DOCCS staff, and that Meyer was not a fair and impartial judge.  (Pl.'s Rule 56 Stmt. ¶¶ 1-4.)

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ."  U.S.

Const. amend. XIV, § 1.  "'[I]t has long been clear that inmates retain due process rights in prison disciplinary hearings.'"  See Porter v. Goord, 04-CV-485, 2004 WL 2271383, at *2 (W.D.N.Y. Oct. 5, 2004) (alteration in original) (quoting Hanrahan v. Doling, 331 F.3d 93, 97 (2d Cir. 2003)).  In Wolff v. McDonnell, the Supreme Court held that whenever an inmate is subjected to a prison disciplinary proceeding that might result in the deprivation of a liberty interest, prison officials must ensure that certain procedural safeguards are in place.  418 U.S. 539, 563-66, 94 S.Ct. 2963, 41 L. Ed. 2d 935 (1974).  For example, the inmate must be provided advance written notice of the charges against him and a written statement by the hearing officer setting forth the evidence relied upon and the reasons for the disciplinary action taken.  Id. at 563-64.  The inmate must also be afforded some opportunity to call witnesses and present documentary evidence.  Id. at 566.  In addition, the hearing tribunal must be sufficiently impartial to guard against "a hazard of arbitrary decisionmaking."  Id. at 571.  Finally, the hearing disposition must be supported by at least "some evidence."  See Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L. Ed. 2d 356 (1985).

With respect to Plaintiff's allegation that he had only three hours to review documentary evidence prior to the hearing, this does not constitute a deprivation of procedural due process.  The documents requested by Plaintiff were not voluminous (see Defs.' Rule 56 Stmt. ¶¶ 19-23) and the hearing continued for multiple days (id. ¶¶ 8, 25).  Even if Plaintiff was unable to review the documents and present evidence on the first day of the hearing, there is no allegation that he was denied the opportunity to introduce that evidence on a subsequent date.  Moreover, even a complete denial of

requested documents is sometimes consistent with due process. Sowell v. Ryan, 823 F. Supp. 107, 109 (W.D.N.Y. 1992) aff'd, 996 F.2d 302 (2d Cir. 1993) ("Prison officials may deny a prisoner's witness request if complying with it would be unduly hazardous to or inconsistent with institutional safety or correctional goals, or if the requested testimony or documentary evidence is irrelevant or unnecessary to the proceeding.") (internal quotations and punctuation omitted); see also Scott v. Kelly, 962 F.2d 145, 147 (2d Cir. 1992).

Similarly, Plaintiff's allegation regarding the refusal of certain witnesses to testify does not raise a material factual issue. "A failure to summon the testimony of a witness who has refused to testify, in the absence of evidence that the refusal was linked to intimidation on the part of prison officials, does not violate due process because calling a witness who refuses to speak upon questioning would be futile." Johnson v. Doling, No. 9:05-CV-376, 2007 WL 3046701, at * 7 (N.D.N.Y. Oct.17, 2007) (citing Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1983)). "Plaintiff has not alleged, and the record provides no indication, that intimidation by prison officials resulted in the refusals of the witnesses" to testify at Plaintiff's hearing. Webb v. Selsky, No. 01-CV-149S, 2008 WL 796179, at *6 (W.D.N.Y. Mar. 24, 2008).

However, the alleged "promise" that Meyer made to Beall during the hearing may be evidence the Meyer prejudged Plaintiff's guilt, and therefore lacked impartiality in his determination of the disciplinary hearing. "Claims of hearing officer bias are common in § 1983 cases by inmate plaintiffs, and where they are based on purely conclusory allegations, they are routinely dismissed." Washington v. Afify, 968 F. Supp. 2d 532, 541 (W.D.N.Y. 2013). In the present case, however, Plaintiff's bias claim is based on

Meyer's alleged off-the-record statement to Beall:  "I give you my word we won't have to worry about Hoyt for a long time once we wrap this hearing up, and we'll see whose [sic] smiling then" (Compl. ¶ 54), which Meyer does not submit evidence to refute.[4]

The Second Circuit has "recognize[d] that the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally" and that, "[b]ecause of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process."  Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989).  But the hearing officer must not prejudge the inmate.  Id. at 48 ("Inmates do enjoy a right to a hearing before a hearing officer who has not prejudged the inmate's guilt . . . ."); see also Torres v. Selsky, No. 02CV0527, 2005 WL 948816, at *9 (N.D.N.Y. Apr. 25, 2005) ("Undeniably, the due process guarantees afforded under the Fourteenth Amendment extend to require that the hearing officer designated to preside over a prison disciplinary hearing be impartial.") (citing Francis, 891 F.2d at 46-47).

This Court has reviewed the transcripts of the hearing, which suggest that Meyer presided over the hearing in a fair manner and afforded Plaintiff ample opportunity to be heard.  However, Meyer's alleged promise raises an issue as to whether he prejudged Plaintiff's guilt.  Construing the facts in the light most favorable to Plaintiff and thus assuming that Meyer did make the statement in question, that statement would be some

---

[4] Defendants cite to Meyer and Beall's denials of the statement in their respective answers to the Complaint (Docket No. 16, p. 7 (citing Docket Nos. 5, 10)), but information in an answer alone does not constitute evidence on a motion for summary judgment.  See MCI Telecommunications Corp. v. Mr. K's Foods, Inc., No. CIV-88-776E, 1990 WL 159065, at *2 (W.D.N.Y. Oct. 16, 1990) ("If assertions in a pleading were afforded such respect [as evidence], summary judgment would quickly become an obsolete procedure.").

evidence of actual bias against Plaintiff.  <u>See</u> <u>Phelan v. Cook County</u>, 463 F.3d 773, 782 (7th Cir. 2006) (evidence of discrimination toward plaintiff employee, including evidence that hearing officer made discriminatory comments to her before ultimately acting as the person who would conclude she should be terminated, was sufficient to defeat defendants' motion for summary judgment).  Plaintiff has thus raised a material issue of fact regarding his claim of a due process violation arising out of the hearing, and Meyer's motion for summary judgment must be denied.

　　　2.  <u>Due Process Claims Against Artus and Prack</u>

　　　Plaintiff also claims that Artus and Prack violated due process by denying his administrative appeals of the disciplinary determination.  Plaintiff alleges that he filed a discretionary review appeal with Artus, and an administrative appeal with Prack.  Both Artus and Prack responded by affirming Meyer's determination, though Prack decreased Plaintiff's penalty from 24 months to 12 months in SHU.  (Pl.'s Rule 56 Stmt. ¶ 7; Defs.' Rule 56 Stmt. ¶¶ 27-28, R. 171-72.)

　　　It is well-settled that a supervisory defendant must have been personally involved in a constitutional deprivation to be held liable under § 1983.  <u>Farrell v. Burke</u>, 449 F.3d 470, 484 (2d Cir. 2006).  "A plaintiff cannot base liability solely on the defendant's supervisory capacity or the fact that he held the highest position of authority within the relevant governmental agency or department."  <u>Houghton v. Cardone</u>, 295 F. Supp. 2d 268, 276 (W.D.N.Y. 2003) (internal quotation and punctuation omitted).  The allegations regarding Artus and Prack's affirmations of the disciplinary determination, standing alone, are not sufficient to raise a material issue of fact as to their personal involvement in a violation of Plaintiff's due process rights.  <u>Ramsey v. Goord</u>, No. 05-CV-47, 2005

WL 2000144, at *6 (W.D.N.Y. Aug. 13, 2005) ("the fact that [defendant commissioner] and [defendant SHU director], as officials in the DOCS 'chain of command,' affirmed [the disciplinary] determination on appeal is not enough to establish personal involvement"); Abdur-Raheem v. Selsky, 598 F. Supp. 2d 367, 370 (W.D.N.Y. 2009) ("The only allegation concerning [defendant SHU director] in the case at bar is that he affirmed the disposition of plaintiff's administrative segregation hearing, pursuant to which plaintiff was confined to SHU. . . . That is not enough to establish [his] personal involvement."). Accordingly, the due process claims against Artus and Prack must be dismissed.[5]

## B.    Eighth Amendment Claim

Plaintiff also claims that Artus is liable with respect to his Eighth Amendment excessive force claim. "The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments,' U.S. Const. amend. VIII, including the 'unnecessary and wanton infliction of pain.'" Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) (quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L. Ed. 2d 859 (1976)). Plaintiff claims that Artus exercised deliberate indifference and failed to protect him from the correctional officers during the September 27, 2012 incident. Plaintiff also claims that Artus has supervisory liability because he knew of the correctional officers' "policy, practice, and custom" of using excessive force, but failed to discipline them or train them otherwise.

---

[5] This Court recognizes that the Second Circuit has, on at least one occasion, allowed a due process claim to proceed against a prison official based partly on the allegation that the official had "affirmed [plaintiff's disciplinary] conviction on administrative appeal" after the plaintiff was denied the opportunity to call witnesses during his disciplinary hearing. Williams v. Smith, 781 F.2d 319, 324 (2d Cir. 1986). Williams is not dispositive here, however, because the Second Circuit recognized that, during the relevant period at that facility, inmates were regularly denied the right to call witnesses, and the defendant could thus be alleged to have been involved in a "custom or policy" of allowing unconstitutional practices. Id.

1.  <u>Failure to Intervene</u>

An officer may be personally involved in the use of excessive force if he either directly participates in an assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so.  See <u>Jeffreys v. Rossi</u>, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003).  This is because "[a] corrections officer bears an affirmative duty to intercede on behalf of an inmate when the officer witnesses other officers maliciously beating that inmate in violation of the inmate's Eighth Amendment rights."  <u>Jones v. Huff</u>, 789 F. Supp. 526, 535 (N.D.N.Y. 1992) (citations omitted); <u>see also</u> <u>Morris v. New York City Dept. of Corr.</u>, 94-CV-2534, 1996 WL 331103, at *3 (S.D.N.Y. June 17, 1996) ("[A]ll law enforcement officers have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.") (internal quotation marks and citation omitted).  Thus, an officer's failure to intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation, unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it.  See <u>Cusamano v. Sobek</u>, 604 F. Supp. 2d 416, 428-29 n. 9 (N.D.N.Y. 2009) (citing cases).

Plaintiff provides no evidence that Artus failed to intercede during the September 27, 2012 incident.  On the contrary, Plaintiff alleges that the use of force ceased immediately upon Artus' arrival.  (Compl. ¶ 31 ("When Defendants realized that Defendant Artus was present and a witness to their conduct, they began pulling each other off of me.").)  Because Artus had no real opportunity to prevent the alleged assault, he did not violate his "affirmative duty to intercede."  See <u>Jones</u>, 789 F. Supp.

at 535.

    2. <u>Supervisory Liability</u>

As noted above, Artus can only be liable under § 1983 if he was personally involved in a constitutional deprivation.  <u>See</u> <u>Farrell</u>, 449 F.3d at 484.  Although Artus did not directly participate in the alleged Eighth Amendment Violation, his personal involvement may still be established by evidence of:

> (1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates.

<u>Hayut v. State Univ. of New York</u>, 352 F.3d 733, 753 (2d Cir. 2003) (citing <u>Johnson v. Newburgh Enlarged Sch. Dist.</u>, 239 F.3d 246, 254 (2d Cir. 2001) and <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995)).  To support a finding of personal involvement based on a failure to supervise, Plaintiff must show that Artus "'knew or should have known that there was a high degree of risk that [his subordinates] would behave inappropriately'" and "'either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to [Plaintiff].'"  <u>Frederick v. Sheahan</u>, No. 6:10-CV-6527(MAT), 2014 WL 3748587, at *8 (W.D.N.Y. July 29, 2014) (alterations in original) (quoting <u>Poe v. Leonard</u>, 282 F.3d 123, 142 (2d Cir. 2002)).

Plaintiff offers no facts supporting his allegation that Artus was negligent in supervising his subordinates, other than the conclusory statements that "Defendant Artus failed to train and discipline his subordinates" and that "Defendant Artus is knowledgeable of [the correctional officer]'s policy, practice, custom, and widespread

habit of carrying out these conducts [sic] via the use of force reports, unusual incident reports, and grievance complaints filed with his office each year." (Compl. ¶ 94.) "[A]llegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987). Accordingly, Plaintiff's claim against Artus for supervisory liability must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. Defendants' motion is granted with respect to Plaintiff's claims against Prack and Artus. Plaintiff's claim against Meyer regarding hearing officer bias may proceed, but any claim relating to his denial of due process based on the inability to present evidence and witnesses is dismissed.

## V. ORDERS

IT HEREBY IS ORDERED that the Motion for Partial Summary Judgment (Docket No. 14) is GRANTED as to Prack and Artus;

FURTHER, that the Motion for Partial Summary Judgment (Docket No. 14) is DENIED as to Meyer;

FURTHER, that the Clerk of the Court is directed to terminate Albert Prack and Dale A. Artus as defendants in this case.

SO ORDERED.

Dated: March 8, 2016
Buffalo, New York

/s/William M Skretny
WILLIAM M. SKRETNY
United States District Judge

13